**FILED**



3:11 pm, 7/17/20

**Margaret Botkins
Clerk of Court**

Raymond W. Martin, WSB# 5-2384
Patrick M. Brady, WSB# 7-5494
Sundahl, Powers, Kapp & Martin, L.L.C.
1725 Carey Avenue
P.O. Box 328
Cheyenne, WY 82003-0328
(307)632-6421
(307)632-7216 facsimile
rmartin@spkm.org
pbrady@spkm.org
*Attorneys for Plaintiff Profile Properties, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| PROFILE PROPERTIES, LLC, A Wyoming Limited Liability Company, ) ) ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 20-CV-134-J |
| ) | |
| WEST AMERICAN INSURANCE COMPANY, An Indiana Corporation ) ) ) ) | |
| Defendant. ) | |

### PROFILE PROPERTIES, LLC'S COMPLAINT

**COMES NOW**, Plaintiff Profile Properties, LLC ("Profile"), by and through its undersigned counsel, hereby alleges the following facts as its complaint:

### PARTIES, JURISDICTION, AND VENUE

1. This Complaint arises from and is related to Defendant West American Insurance Company's ("West American") handling of a property insurance claim by Profile arising from fire damage to Profile's property at 4120 W. 5th Street, Cheyenne, WY 82001 (the "Property").

2. Profile is a Wyoming limited liability company whose principle place of business is in Wyoming.

3. West American is an Indiana corporation, whose principal place of business is located at 175 Berkeley Street, Boston, MA 02116.

4. This Court has specific personal jurisdiction over West American because West American and its handling of Profile's claim have significant contacts with Wyoming.

5. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in Wyoming and because the property forming the basis for this action in located in Wyoming.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. Profile hereby adopts and restates paragraphs 1 through 6 of this Complaint as though full set forth herein.

8. At all times relevant to this Complaint, Profile had a policy of insurance with West American that provided commercial general liability, property damage, and business income coverage. A copy of Policy Number BKW (17) 55 58 69 87 (the "Policy"), issued to Profile by West American, is attached hereto as *Exhibit A*.

9. At all times relevant to this Complaint, the Property was insured under the Policy.

10. On December 6, 2016, a fire occurred at the Property.

11. At the time of the fire, C.H. Yarber Construction, Inc. ("Yarber") leased the Property from Profile.

12. The fire caused significant damage to the Property that rendered the Property unsuitable for use by Yarber.

13. Profile, through its public adjuster, began sending documentation to West American on January 16, 2017 at the latest.

15. On April 17, 2017, West American provided its first estimate for the reconstruction of the Property.

16. West American's April 17, 2017 estimate only discussed the scope of the work to be done and did not set forth how much West American would pay for this work.

17. On May 26, 2017, Profile's public adjuster met with representatives from West American to discuss the costs of reconstruction for the Property.

18. West American stated that its construction pricing would be based on new construction pricing instead of a market price estimate.

19. The Policy states:

**4. Loss Payment**
**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:
- **(1)** Pay the value of lost or damaged property;
- **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
- **(3)** Take all or any part of the property at an agreed or appraised value; or
- **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

*Ex. A, Form CP 00 10 10 12, p. 12.*

20. By arguing for new construction pricing, West American would have compensated Profile for less than the actual cost of repairing or replacing the lost or damaged property.

21. Due to disagreements between West American and Profile regarding the scope of the loss and cost of repairs, Profile would not execute a statement of loss until those disagreements were dealt with.

22.     Profile did, however, submit several estimates of the damage to the Property before ultimately requesting an appraisal.

23.     Because West American and Profile were unable to resolve their differences, Profile demanded an appraisal pursuant to the provisions of the Policy on June 26, 2017.

23.     The Policy specifically sets froth Profile's right to an appraisal:

**2.     Appraisal**
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
    **a.**     Pay its chosen appraiser; and
    **b.**     Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.

***Ex. A, Policy Form CP 00 10 10 12, p. 11.***

24.     Profile demanded an appraisal again on July 17, 2017.

25.     Profile's July 17, 2017 appraisal demand included the appointment of Alan Mathews as its appraiser.

25.     West American denied the appraisal on July 31, 2017.

26.     West American's basis for denying the appraisal was the fact that Profile had not submitted a Sworn Statement in Proof of Loss.

27.     West American also claimed that it needed to complete a coinsurance investigation prior to any appraisal taking place.

28.     West American's coinsurance investigation had no bearing on the specific issues to be resolved by the appraisal: value of the property and the amount of loss.

29. West American's insistence on completing its coinsurance investigation as a prerequisite for the appraisal moving forward was not supported by the terms of the Policy and only served to delay adjustment and payment of West American's claim.

30. Nonetheless, Profile provided West American with all information necessary for the coinsurance investigation.

31. Profile has not been apprised of the results of that coinsurance investigation.

31. West American did not appoint an appraiser until October 6, 2017, almost three months after receiving Profile's second appraisal demand.

32. Between October 6, 2017 and November 21, 2017, the appraisers worked to select a mutually agreeable umpire.

33. On November 21, 2017, West American filed a Complaint for Appointment of Umpire in Laramie County District Court.

34. The court appointed retired Colorado District Court Judge Thomas Moorhead as umpire on January 24, 2018.

35. After Judge Moorhead's appointment, West American's appraiser insisted that there was a controversy regarding the scope of the appraisal.

36. On information and belief, West American instructed their appraiser to appraise only the differences between West American's estimated value of the loss and Profile's estimated value of the loss.

37. The scope of appraisal adopted by West American is inconsistent with the scope of the appraisal set forth in the Policy.

38. It was not until May 7, 2018 that West American finally agreed to the scope of appraisal set forth in the Policy.

39. On information and belief, West American's appraiser did not begin preparing his initial appraisal estimate until May 15, 2018, nearly ten months after West American received Profile's appraisal demand.

40. West American's appraiser did not submit his first appraisal estimate until November 8, 2018, nearly sixteen months after West American received Profile's appraisal demand.

41. Because of West American's delays in appointing an appraiser and its appraiser's delays in preparing its estimate, the appraisal panel did not enter an appraisal award until August 9, 2019 – more than two years after West American first received Profile's appraisal demand.

42. The Appraisal Award valued Replacement Cost Value of structure reconstruction/repairs at $1,712,249.81.

41. West American's pre-appraisal estimate valued the Replacement Cost Value of structure reconstruction/repairs at $1,286,180.72, or $426,069.09 less than the ultimate appraisal award.

42. The Appraisal Award also valued Replacement Cost Value of underground reconstruction/repairs at $29,706.27.

43. The Appraisal Award valued Depreciation for structure reconstruction/repairs at $455,060.35.

43 West American's pre-appraisal estimate valued Depreciation for structure reconstruction/repairs and underground reconstruction/repairs at $291,278.03, or $163,782.32 less than the ultimate appraisal award.

44. The Appraisal Award also valued Depreciation for underground reconstruction/repairs at $5,973.65.

44. The Appraisal Award also valued the Actual Cash Value of structure reconstruction/repairs at $1,257,189.46.

45. West American's pre-appraisal estimate valued the Actual Cash Value of structure reconstruction/repairs at $994,902.16, or $262,286.77 less than the ultimate appraisal award.

46. The Appraisal Award also valued the Actual Cash Value of underground reconstruction/repairs at $23,732.62.

43. The Policy provides coverage on a replacement cost value basis.

44. Pursuant to the Policy's coverage for replacement cost value, West American is required to pay depreciation for the Property.

44. The Policy sets forth the following relevant conditions for payment under Profile's replacement cost value coverage:

> **d.** We will not pay on a replacement cost basis for any loss or damage:
>    **(1)** Until the lost or damaged property is actually repaired or replaced.
>    **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.
>
> **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3),** subject to **f.** below:
>    **(1)** The Limit of Insurance applicable to the lost or damaged property;
>    **(2)** The cost to replace the lost or damaged property with other property:
>       **(a)** Of comparable material and quality; and
>       **(b)** Used for the same purpose; or
>    **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

*Ex. A, Policy Form CP 00 10 10 12, p. 16.*

45. Profile has provided West American with sufficient information to show the cost of replacing the damaged property with property of comparable material and quality and property used for the same purpose.

46.     West American continues to deny Profile's claim for depreciation by claiming that they need additional documentation.

47.     West American refuses to identify the specific documentation required, despite frequent requests by Profile.

## FIRST CAUSE OF ACTION
### Breach of Contract

48.     Profile hereby adopts and restates paragraphs 1 through 47 of this Complaint as though full set forth herein.

49.     Profile's insurance policy issued by West American is a valid and enforceable contract.

50.     The Policy requires that West American pay Profile depreciation as part of the Policy's replacement cost coverage.

51.     Profile paid an increased premium to obtain replacement cost coverage.

52.     Profile has expended costs in replacing the damaged property with property of comparable material and quality and property used for the same purpose.

53.     Profile has submitted documentation sufficient to substantiate the fact that it has actually replaced the damaged Property.

54.     West American has refused to pay Profile the depreciation required by the replacement cost coverage in Profile's policy with West American.

55.     West American's failure to pay Profile the depreciation required by the replacement cost coverage has damaged Profile in the amount of $461,034.00 or in such amount as may be proven at trial.

## SECOND CAUSE OF ACTION
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

56. Profile hereby adopts and restates paragraphs 1 through 55 of this Complaint as though full set forth herein.

57. Every contract in Wyoming, including insurance policies, contains an implied covenant of good faith and fair dealing.

58. West American breached that duty by delaying and denying the payment of benefits owed to Profile pursuant to the Policy without any reasonable basis to do so.

59. West American acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis to deny and delay payment of the benefits owed to Profile pursuant to the Policy.

59. West American acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis to deny Profile's appraisal request.

60. West American acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis to wait nearly three months after receiving Profile's appraisal demand to appoint an appraiser.

60. West American acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis to insist upon a scope of appraisal that was inconsistent with the terms of the Policy.

61. West American acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis for appointing an appraiser who took nearly six months to prepare their first appraisal estimate.

62. West American acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis for refusing to encourage their appointed appraiser to complete the appraisal process in a timely fashion.

62. West American is liable for the delays caused by their appointed appraiser.

63. West American's delays were intentionally and deliberately designed to delay payment of Profile's claim.

64. West American further acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis for refusing to pay depreciation pursuant to Profile's replacement cost value coverage.

65. West American further acted with knowledge of, or in reckless disregard of, its lack of a reasonable basis for refusing to identify what specific information it requires to pay depreciation pursuant to Profile's replacement cost coverage.

66. West American's breaches of its duties of good faith and fair dealing have damaged Profile in an amount to be proven at trial, including but not limited to:

    a. lost rental income resulting from West American's delays in adjusting Profile's claim;

    b. expenses related to damage caused by West American's refusal to timely release the premises for demolition and cleanup;

    c. lost business opportunities from the inability of Profile to market the Property for sale, lease, or exchange;

    d. unpaid depreciation owed pursuant to Profile's replacement cost coverage;

    e. prejudgment interest;

    f. punitive or exemplary damages;

    g. Profile's reasonable costs and attorney's fees incurred attempting to have West American honor its obligations set forth in the Policy, pursuant to W.S. § 26-15-124(c).

    h. any other damages proven at trial.

**WHEREFORE,** Profile requests that this Court enter judgment against West American in an amount to proven at trial, including pre- and post-judgment interest, and for such other and further relief the Court finds to be appropriate in the circumstances.

DATED this 17th day of July 2020.

Raymond W. Martin, WSB# 5-2384
Patrick M. Brady, WSB# 7-5494
Sundahl, Powers, Kapp & Martin, L.L.C.
1725 Carey Avenue
P.O. Box 328
Cheyenne, WY 82003-0328
(307)632-6421
(307)632-7216 facsimile
rmartin@spkm.org
pbrady@spkm.org
*Attorneys for Plaintiff Profile Properties, LLC*